Christina L. Henry
Henry, DeGraaff & McCormick, P.S.
1833 N. 105th St.
Suite 200
Seattle, WA 98133
(206) 330-0595

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATASHA A. KHACHATOURIANS,<br><br>               Plaintiff,<br><br>vs.<br><br>BISHOP, WHITE, MARSHALL & WEIBEL, P.S., PETER R OSTERMAN and JANE DOE OSTERMAN, husband and wife, LAURIE K. FRIEDL and JOHN DOE FRIEDL, wife and husband Defendants. | No. 2:12-CV-01528-JCC<br><br>**PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS CERTAIN CLAIMS AND PARTIES PURSUANT TO CIVIL RULE 12(b)(6)** |

**I. INTRODUCTION**

COMES NOW Plaintiff Natasha Khachatourian's Response to Defendant's Motion to Dismiss Certain Claims and Parties Pursuant to Rule 12(b)(6). *See* Def.'s Mot. to Dismiss, Sept. 20, 2012, ECF No. 12.

Since filing the Complaint in this case, on September 26, 2002, the Washington State King County Superior Court in Case# 10-2-21881-5 SEA vacated the default judgment obtained

by Discover Bank, N.A. against the Plaintiff on June 25, 2010 due to a lack of notice under Superior Court Rule ("CR") 55, filing the Order void under CR60(b)(5). The court did not make a finding of fraud under CR60(b)(4) and denied attorney fees to Ms. Khachatourians. A copy of the Superior Court's order is attached as Exhibit A. This decision in no way supports the Defendants' Motion to Dismiss.

## II.  ARGUMENT

**A.  Standard of Review Under Rule 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b) states in relevant part that "a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When challenged with a Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)., the Defendant must similarly allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While review of a Rule 12(b)(6) motion is limited to the complaint, and other materials incorporated thereto, when considering a Rule 12(b)(6) motion, the court "accepts the plaintiffs' allegations as true and construes them in the light most favorable to the plaintiffs." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (internal quotations and citations omitted). A complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). The Rule 12(b)(6) standard only requires a complaint to contain sufficient factual allegations, to state a claim of relief that is plausible on its face. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Plaintiff's complaint must

state a plausible claim for relief, that contains "sufficient allegations of underlying facts" to support her legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216, *reh'g en banc denied*, 659 F.3d 850 (9th Cir. 2011).

Here, the allegations in Ms. Khachatourians' complaint are detailed and follow from the facts.  They are not conclusory. *Holden v. Hagopian*, 978 F. 2d 1115, 1121 (9th Cir. 1992). However, if the court finds some claims state insufficient factual allegations, as a general rule, leave to amend a complaint or claim that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). Leave to amend should only be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); see *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

The allegations in the stated complaint are sufficient to state claims under the Fair Debt Collections Practices Act (FDCPA), the Washington Consumer Protection Act (WCPA), the Washington Collection Agency Act (WCAA), and under the other prayers for relief requested in Ms. Khachatourians First Amended Complaint for Damages (Pl.'s Am. Compl., Sept. 13, 2012, ECF No. 10).

**B. The Statute of Limitations on FDCPA Claims Is One Year**

The Plaintiff concedes that the statute of limitations on FDCPA claims is governed by 15 U.S.C. § 1692k(d), and is limited to one year from the date of the violation.  Facts stated in paragraphs 8 thru 29 of the complaint detail events related to violations of the WCPA, not the FDCPA.  The complaint only alleges violations of the FDCPA that occurred after September 8, 2011, thus no claims under the FDCPA should be dismissed due to the statute of limitations.

**C. Debt Collectors, Whose Business is to File Lawsuits to Collect Debts, are not Immune from the WCPA When they File Lawsuits**

Defendants argue that actions taken after a matter is filed with a court do not fall under the WCPA because "such events do not satisfy the requisite element that such acts be within the sphere of trade or commerce." Def.'s Mot. to Dismiss 9 (citing *Blake v. Fed. Way Cycle Ctr.*, 40 Wn. App. 302 (1985)). To prevail on a CPA claim, a plaintiff must establish five distinct elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

The first two elements may be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred the conduct of any trade or commerce. Alternatively, these two elements may be established by a showing that the alleged act constitutes a *per se* unfair trade practice. A *per se* unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated. *Hangman Ridge*, 719 P.2d at 533.

**a. Unfair or Deceptive Act or Practice Occurring in Trade or Commerce**

Certain violations of the WCAA are deemed to be unfair or deceptive acts or practice occurring in trade or commerce. RCW 19.16.250 ; *Evergreen Collectors v. Holt*, 803 P.2d 10, 12-13 (Wash. Ct. App. 1991). In particular, the WCAA states under RCW 19.16.250(8) that any violation of that act is a *per se* unfair act or practice or unfair method of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.  Thus, a violation of the WCAA establishes *per se* the first two elements of a WCPA claim as articulated in *Hangman Ridge,* 719 P.2d at 533. *See* RCW

19.16.250. This Complaint alleges allegations under RCW 19.16.250(8)(c) and 19.16.250(8)(c) which are both violations that meet that *per se* criteria. Thus, "where the very business of a collection agency often requires it to sue debtors in court," even though they may be lawyers, that conduct qualifies as trade or commerce under the WCPA. *Evergreen Collectors*, 60 Wn. App. at 156; *accord Cruson v. A.A.A.A., Inc.*, 140 Wn. App. 1012 (2007) (unpublished) (finding that when a collection agency routinely files lawsuits against debtors as part of its business, the agency's conduct, pleadings, affidavits, and testimony within those lawsuits should be considered within the sphere of trade or commerce).

As alleged in Ms. Khachatourians' First Amended Complaint, Defendants' business is to collect on outstanding debts (Pl.'s Am. Cmpl. 2). It does so by negotiating contracts with creditors to pursue those debts (*id.* at 6) using a variety of methods, most notably bringing suit in court. As part of these lawsuits, Defendants request attorneys' fees, but fail to disclose the basis for these fees (*id.*). These aspects of Defendants' legal services business constitute entrepreneurial activities because they implicate how the price of legal services is determined and how the firm obtains clients, bringing Defendants into the ambit of the WCPA. *See Short v. Demopolis*, 103 Wn. 2d 52, 60-61 (1984).

This case is therefore similar to *Evergreen Collectors*. *See* 60 Wn. App. at 152-54. Evergreen Collectors brought suit in Pierce County District Court to collect on a claim. *Id.* at 153. Before the trial, the parties reached an agreement that if the plaintiffs paid a settlement amount, Evergreen would agree to dismiss the lawsuit. *Id.* The plaintiffs paid the required amount and requested that Evergreen send a dismissal order to them. *Id.* The plaintiffs never received the dismissal order, failed to file an answer and yet more than a year later, discovered that Evergreen wanted a trial date to recover its costs. *Id.* Evergreen never disclosed the exact

amount of those costs, and instead attempted to recover an additional amount for their attorney's fees. *Id.* at 153-54.

The *Evergreen* court distinguished the *Blake* case cited by the defendants on the grounds that when a collection agency's business is to file lawsuits in court, conduct of that kind may be violative of the WCAA as a *per se* violation. *Id.* at 156. Tellingly, when discussing *Blake*, the court stated that "it would be ludicrous to hold that an agency's tactics after filing suit are exempt from [WCPA] coverage," and that *Blake* does not bar recovery in these types of cases. *Id.* at 156-57.

### b. Public Interest Impact

Defendants' next contention, that under Washington law, adversaries of a lawyer's client cannot sue the lawyer under the WCPA (Def.'s Mot. to Dismiss 9) because it did not meet the public interest prong, is foreclosed under *Panag*. *See* 166 Wn. 2d at 44. In *Panang*, the Washington Supreme Court considered the question whether the WCPA applies to a collection agency's deceptive efforts to collect on an insurance company's subrogation claim against an underinsured motorist. *Panang* 166 Wn. 2d at 34. There, the Washington Supreme Court considered the question whether the WCPA applies to a collection agency's deceptive efforts to collect on an insurance company's subrogation claim against an underinsured motorist. *Panang* 166 Wn. 2d at 34. There, the defendants argued that there exists an "adversarial relationship exemption to the [W]CPA." *Id.* at 41. However, the court held that the distinction between consensual relationships and adversarial ones "loses persuasive force when the adversarial relationship is mediated by . . . [a] collection agency" because when a collection agency engages in deceptive practices, the public expects that it be held accountable regardless of whether there is an adversarial or consensual relationship. *Id.* at 43. Thus, the court held that there is no adversarial exemption from suit under the WCPA. *Id.* at 44; *see also Seyfarth v. Reese Law Group, P.L.C.*, No. C09-572BHS, 2010 WL 2698819 at *4-5 (W.D. Wash. July 7, 2010). In these situations, the "unfair"

and "deceptive" act is objective, likely to mislead a "reasonable" or "ordinary" consumer. *Panag,* 204 P.3d at 891(collection notices had the capacity to deceive a substantial portion of the public because language could induce people to remand payment in the mistaken belief they had a legal obligation to do so). The legislature's primary purpose in regulating the business of debt collection under the WCAA is to raise public confidence in the honesty and reliability of those who engage in that business. Thus, violations of the regulations of the debt collection industry necessarily implicate the public interest and constitute a *per se* violation of the WCPA, satisfying this prong of *Hangman Ridge.* 719 P.2d at 533; *Panag*, 204 P.3d at 892.

### c. Injury to Business or Property Caused by Violation of WCAA

The final elements of a WCPA claim are whether the defendant's conduct caused injury to the plaintiff in his or her business or property. "The injury involved need not be great, but it must be established." *Hangman Ridge,* 719 P.2d at 539. The plaintiff must also show that she would not have suffered an injury would not have occurred but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury. *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 290 (Wash Ct. App. 2008) (citing *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 170 P.3d 10, 22 (Wash. 2007)).

Here, *Panang* also refutes Defendants' argument that Ms. Khachatourians cannot bring a suit against them because she is not their client and by implication she did not suffer any injury from them (Def.'s Mot. to Dismiss 10). 166 Wn. 2d at 43-44.  The *Panang* court stated that the WCPA itself, the purposes for which it was enacted, and its cases do not support the argument that a WCPA claim must be predicated on an underlying consumer or business transaction. *Id.* at 39.  Consequently, a private WCPA action may be brought "by one who is not in a consumer or other business relationship with the actor against whom the lawsuit is brought." *Id.* at 39, 44.  Requiring such a relationship would "defeat the goals of the [W]CPA" because it would impose

RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 7

HENRY, DEGRAAFF & MCCORMICK, P.S
1833 N. 105TH ST., SUITE 200
SEATTLE, WA 98133
(206) 330-0595

<mark>
<mark>
</mark>
</mark>

an "insurmountable obstacle" to suit by persons in Ms. Khachatourians' position and would "unduly restrict the intended broad scope of the act and conflict with both its language and purpose." *Id.* at 44, 47.

It is enough to show that the deceptive act or practice proximately caused injury to the plaintiff's "business or property," without regard to the relationship of the parties. In *Panang*, the Plaintiff suffered investigation expenses that went beyond the expenses of litigating her personal injury claim, and caused injury through additional costs that stemmed from the direct result of the deceptive collection method, thus satisfying the injury element. 204 P.3d at 903. In similar circumstances here, the Defendant's deceptive acts actually induced Ms. Khachatourian to make payments on interest, attorney fees and costs that are not owed and caused her to suffer a court judgment which could affect her employment, bar license and her credit record. These actions, even though they were done by lawyers constitute injury to her. *Panang*, 204 P.3d at 902. In addition, s. Kachatourians incurred attorney fees and costs, and time away from work to work with a lawyer to vacate the default judgment, eliminate the interest, attorney fees and court costs illegally added to her amount owing to Discover. Id.

Thus, Ms. Khachatourians' WCPA claims stand because she has met all the prongs under *Hangman Ridge* and since Defendants' business includes filing lawsuitstheir activities are regulated by the WCAA and there is there is no adversarial exemption under the WCPA.

D. **Defendants' Violations of Washington State Rules of Professional Conduct ("RPC") are Relevant factors to Support Unfair or Deceptive Trade Practices Under the WCAA, and WCPA**

Defendants argue that Ms. Khachatourians' Fourth Claim for Relief should be dismissed because a violation of the Rules of Professional Conduct (RPCs) does not set forth a standard

for civil liability, and thus does not give rise to an independent cause of action (Def.'s Mot. to Dismiss 5) (citing *Woodhouse v. Re/Max Nw. Realtors*, 75 Wn. App. 312, 316 (1994).  Ms. Khachatourians contends that Defendants obtained a default judgment by engaging in fraud on the state court by failing to inform the court about their communications with Ms. Khachatourians (Pl.'s Amd. Cmpl. 14), and by failing to disclose their payment arrangements with her (*id.* at 15).  By engaging in this conduct, and by knowingly submitting an ex parte order for judgment for an amount greater than the amount actually owed, Ms. Khachatourians alleges that Defendants violated the RPCs.

While it is true that *Woodhouse* states the proposition that the RPCs do not set forth a standard for civil liability.  75 Wn. App. at 316.  However the courts have upheld the relevance of RPCs in other courts. In *Eriks v, Denver*, 118 Wn.2d 451, 457-58 (Wash 1992) the court addressed the question of whether the determination of a violation of the Code of Professional Responsibility ("CPR") is a question of law or fact. In that case, the court held that a determination of the legal issue concerning an attorney's alleged breach of his fiduciary to his clients arose from the same rules as the those for a CPR violation. *Eriks*, 118 Wn.2d at 457-58. The CPR at issue in the *Eriks* case involved an attorney who represented multiple clients with potential conflicts and he failed to follow the relevant CPRs regarding multiple client representations and failed to follow the prudent exercise of his own dependent professional judgment in deciding whether it was appropriate to represent them all simultaneously. *Id.*

In that case, the court looked to the CPRs and disciplinary rules because their purpose is to protect the public from attorney misconduct and the court found that relevant to the legal cause of action regarding an alleged breach of fiduciary duty. As part of its analysis, the court looked to the particular facts of the case, finding that the violation of a CPR is a question of law

Henry, DeGraaff & McCormick, P.S
1833 N. 105th St., Suite 200
Seattle, WA 98133
(206) 330-0595

that can be used as a factor in a cause of action. Id. However, the court also clarified that its holding did not consider issues of attorney malpractice. Id at 462.

This case is not a legal malpractice case, but one brought, among others, under the FDCPA, WCPA, and WCAA. In such a context, violations of the RPCs are relevant to show unfair practices or misleading representations. Indeed, what is unfair under those statutes could be established by showing that the practice is within "at least the penumbra" of some common law, statutory "or other established concept of unfairness." *See Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972); *see also In re Zenner*, 348 S.C. 499, 507 (2002) (finding that a an attorney could be sanctioned for loaning his name to a collection agency that engaged in the unauthorized practice of law and abusive debt collection).

Since the Erik ruling, the court in Hizey v. Carpenter, 119 Wn.2d 251, 259-60, 830 P.2d 646 (1992) further clarified that RPC violations can be used by courts to consult ethical issues so long as they rely on them for reasons other than to find malpractice liability. Where the courts have done so, they have found violation of the RPCs is a question of law, not fact. In the recent case of Behnke ex rel. G.W. Skinner Children's Trust v. Ahrens, 169 Wash. App. 360 (2012), the court held that a disgorgement of attorney fees by the trial court is a reasonable way to discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type and that such an order is within the inherent power of the trial court. *Behnke*. Having independently decided that Ahrens violated the RPC conflict of interest rules, the *Behnke* court held that Ahrens should disgorge all the fees he received for representing the *Behnkes* and that the *Behnkes* had a full opportunity to present their theories and evidence of damages to the jury. (citation). In similar circumstances here, Kachatourians should be allowed to demonstrate the violation of the RPCs to support her claims.

E. **Rooker Feldman Doctrine**

Defendants also argue that the *Rooker-Feldman* doctrine "prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments" (Def.'s Mot. to Dismiss 8), and that the state court is the best forum to hear any allegations that Defendant violated the RPCs (*id.* at 7). Ms. Khachatourians's complaint alleges that Defendants misrepresented the nature of her case and the amount owed to the state court in an *ex parte* order, violating the RPCs, and the WCAA, and the WCPA and later the FDCPA when she was noticed with the default judgment on September 9, 2011.

The Rooker-Feldman doctrine is a well-established jurisdictional rule prohibiting federal courts, other than the United States Supreme Court, from sitting in direct review of state court decisions. In other words, federal courts lack subject-matter jurisdiction to act as a court of appeals for state court decisions. *Johnson v. Grandy,* 512 U.S. 997, 1005-06 (1994) (citing Rooker, 263 U.S. at 416; and Feldman, 460 U.S. at 482); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004); *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (core inquiry is whether the Federal action is a de facto appeal from a final state court judgment). In addition to barring direct review, the doctrine prevents a federal court from considering any claims that amount to a collateral attack on issues that are "inextricably intertwined" with the state court's decision. *Noel v. Hall*, 341 F.3d 1148, 1156-58 (9th Cir. 2003).

On the other hand, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction. If the federal plaintiff and the adverse party are

simultaneously litigating the same or a similar dispute in state court, the federal suit may proceed under the long-standing rule permitting parallel state and federal litigation. *See, e.g., Atl. Coast Line,* 398 U.S. at 295, 90 S.Ct. 1739 ("[T]he state and federal courts had concurrent jurisdiction in this case," and the parties could "simultaneously pursue claims in both courts."). Or if the federal plaintiff and the adverse party have already litigated the state court suit to judgment, the federal plaintiff may be precluded from re-litigating that dispute under the inter-jurisdictional preclusion rule of 28 U.S.C. § 1738. *See, e.g., Kremer,* 456 U.S. at 466, 102 S.Ct. 1883 ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."). In neither situation does *Rooker-Feldman* bar subject matter jurisdiction in federal district court, for in neither situation is the federal plaintiff complaining of legal injury caused by a state court judgment because of a legal error committed by the state court. Rather, in both situations, the plaintiff is complaining of legal injury caused by the adverse party.

Because *Rooker-Feldman* does not bar subject matter jurisdiction when a plaintiff alleges claims that do not challenge the ruling of the state court as a defacto appeal; the Feldman "inextricably intertwined" test does apply and Plaintiffs claims are not barred by the Rooker-Feldman doctrine. *Noel,* 341 F.3d at 1158. Thus, the RPC violations are relevant and distinct from any state court judgment or error and Ms. Khachatourians' should be granted leave to amend the Fourth Claim of Relief to allege specific violations of the WCPA are triggered by those RPC violations.

F. **Witness immunity applies only to expert witnesses or live testimony, not to attorney's declarations**

The cases cited by the Defendants for the proposition that witnesses cannot be held liable for their testimony are not relevant to the causes of action or the facts pled by the plaintiffs.  Those cases deal with either 1) expert witnesses, or 2) live testimony, where there are procedural safeguards inherent in the nature of the proceeding.  An ex-parte proceeding has no such safeguards (most importantly, there is no cross-examination).  Therefore, the policy reasons for witness immunity do not apply to ex-parte proceedings.  Indeed, Washington's Rules of Professional Conduct state that an attorney's duty to the tribunal is higher in an ex-parte proceeding:

> In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

RPC 3.3(f)

The comments to the rule make it even more evident:

> Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in any ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.

Official comment 14 to RPC 3.3.

Furthermore, the Defendants have failed to cite any cases where witness immunity was applied to the declaration *of counsel* to the court, let alone a case where witness immunity was found to apply in an *ex parte* proceeding.

The facts of the first case cited by the Defendants for this proposition, *Wynn v. Earin*, 163. Wn.2d 361 (2008), could not be further from the case at hand.  There, the court was

RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 13

HENRY, DEGRAAFF & MCCORMICK, P.S
1833 N. 105TH ST., SUITE 200
SEATTLE, WA 98133
(206) 330-0595

analyzing the liability of a health care provider for disclosing confidential information at a guardian ad litem proceeding.

Here, the testimony at issue is the representation made to the court by BWMW that the amount of the debt owed to Discover was several hundred dollars more then they knew it to be, because it failed to account for the payments made by the debtor before the Defendants applied to the court for a default judgment. No public policy would be served by protecting debt collectors from liability for making false representations to the court in an *ex parte* proceeding.

**E.  Plaintiff's conversion claim does not fail because Defendants willfully and without legal justification deprived Plaintiff of her personal property.**

The Defendants correctly state the legal elements for a claim of conversion, but fail to properly apply it to the facts of this case. Defendants have not denied that the ACH payments taken after the authorization expired were taken willingly, nor have Defendants explained what "legal justification" they had for debiting the Plaintiff's account after the authorization had expired. Defendants' argument seems to be based on the fact that the Plaintiff admits she owed a debt to discover. However, Plaintiff has not admitted she owes a debt to the Defendants. Furthermore, it is ludicrous to think that the mere existence of a debt allows a creditor to forcibly deprive a debtor of their personal property with no due process of any kind. The Defendants did not obtain a writ of garnishment, nor did they have a valid authorization to debit the account. Therefore, the claim of conversion is valid.

**F.  Claims against Peter Osterman and Laurie Friedl, and their marital communities, should stand, or Plaintiff should be granted leave to further amend the complaint to allege actionable conduct reasonably expected to be revealed in discovery.**

RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 14

HENRY, DEGRAAFF & MCCORMICK, P.S
1833 N. 105TH ST., SUITE 200
SEATTLE, WA 98133
(206) 330-0595

Laurie Friedl and Peter Osterman are two of the attorneys who signed pleadings on behalf of BWMW while the violations of common law, the FDCPA, the WCPA and the WCAA occurred.  Plaintiff has no way of knowing the true extent of their personal involvement until completing discovery, but the Plaintiff expects to find sufficient facts to justify the claims against each and every party named.  Should the court believe that the claims against Laurie Friedl and Peter Osterman are insufficiently pled, the Plaintiff respectfully asks this court for leave to further amend the First Amended Complaint to more specifically allege the specific conduct that Plaintiff believes will be supported by discovery.

**Conclusion**

The Defendants Motion to Dismiss Certain Claims and Parties should be denied in it's entirety.  The Plaintiff has sufficiently pled its allegations against all parties to state valid claims based on the elements of each claim.  The court should grant leave to amend those causes of action that it finds insufficiently pled, as the factual allegations contained in the First Amended Complaint more than sufficiently justify each of the claims pled.

RESPECTFULLY SUBMITTED this 9th day of October 2012.

/s/ Christina L. Henry
Christina L. Henry, WSBA #31273
Attorney for Defendant

RESPONSE TO DEFENDANTS' MOTION TO DISMISS - 15

HENRY, DEGRAAFF & MCCORMICK, P.S
1833 N. 105TH ST., SUITE 200
SEATTLE, WA 98133
(206) 330-0595