THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATASHA A KHACHATOURIANS,

Plaintiff,

v.

BISHOP WHITE MARSHALL AND
WEIBEL PS, et al.,

Defendants.

CASE NO. C12-1528-JCC

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 12) and Plaintiff's motion for an extension of time (Dkt. No. 16). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS Plaintiff's motion and GRANTS in part and DENIES in part Defendants' motion for the reasons explained herein.

I.     BACKGROUND

This case arises out of a law firm's attempt to collect a consumer debt that Plaintiff owed to Discover Bank, the law firm's client. Plaintiff alleges that the law firm acted as a debt collector and violated various provisions of state and federal law in its attempts to collect the debt from her. (Dkt. No. 10.) Plaintiff owed $5,216.98 on a credit card issued by Discover. (*Id.* at 4.) Plaintiff alleges that she set up a payment plan with the Defendants, under which she authorized Defendants to debit $150 payments from her bank account monthly. (*Id.* at 3.)

1   Plaintiff understood that Defendants would not pursue legal action against her as long as she

2   continued to make payments under the plan. (*Id.*) Defendants' letter to Plaintiff memorializing

3   the payment plan stated she had authorized Defendants to debit $150 from her bank account

4   monthly from May 18, 2010 to May 18, 2011. (*Id.* at 4.) It also stated that if Plaintiff had

5   insufficient funds to make the payments or she terminated her debit authorization before the

6   account was paid in full, Defendants "may continue with legal action to collect the full balance

7   owing." (*Id.*) Defendants debited $150 from Plaintiff's account on May 18 and June 8, 2010.

8   (*Id.*)

9       Notwithstanding the payment plan and first two payments, Defendants filed an ex parte

10  motion for default judgment against Plaintiff in state court on June 21, 2010. (*Id.* at 5.)

11  Defendants did not mention the payment plan or payments made under it in their pleadings

12  before the state court. (*Id.*) On June 25, 2010, the state court entered a default judgment against

13  Plaintiff in the amount of $6,049.98, which included court costs and an attorney's fee.[1] (*Id.* at 6–

14  7.) After obtaining this judgment, Defendants continued to debit $150 each month from

15  Plaintiff's bank account pursuant to the payment plan. By September 7, 2012, Plaintiff had made

16  twenty-eight payments of $150 totaling $4,200. (*Id.* at 11.) Defendants sent letters to Plaintiff

17  that contained balance statements that were inconsistent with the payments she had made and

18  with prior balance statements, but contained no explanation of these discrepancies. (*Id.* at 10–

19  12.)

20      Plaintiff's first amended complaint alleges that in attempting to collect her debt,

21  Defendant law firm and Defendants Osterman and Friedl—both attorneys—violated the Fair

22  Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Washington Collection

23  Agency Act ("WCCA"), Wash. Rev. Code § 19.16.250, and the Washington Consumer

24  Protection Act ("CPA"), *id.* § 19.86. She also makes claims for fraud upon the court and

25  _____

26      [1] The default judgment against Plaintiff was vacated on September 26, 2012. (Dkt. No. 20.)

1   conversion. Defendants move to dismiss most of Plaintiff's claims.

2   **II.     DISCUSSION**

3           A party may move to dismiss a complaint that fails to state a claim upon which relief can

4   be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain

5   sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.

6   *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff

7   pleads factual content that allows the court to draw the reasonable inference that the defendant is

8   liable for the misconduct alleged. *Id.* at 678. A claim that fails to present a "cognizable legal

9   theory" or sufficient facts to support a cognizable claim will be dismissed under Rule 12(b)(6).

10  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

11          **A.     Plaintiff's Motion for an Extension of Time**

12          Local Civil Rule 7(d)(3) provides that a dispositive motion shall be noted for

13  consideration on a Friday no earlier than the fourth Friday after the motion is filed and served.

14  The Rule also provides that opposition to a dispositive motion is due the Monday before the

15  noting date. Civ. R. 7(d)(3).  Defendants' motion to dismiss was properly noted for consideration

16  on Friday, October 12, 2012. Plaintiff's response to Defendants' motion to dismiss was due on

17  Monday, October 8 but was filed after close of business on Tuesday, October 9. (Dkt. No. 19.) It

18  was one day late. Plaintiff's counsel misread Local Rule 7 and believed that the response was not

19  due until Wednesday, October 10, 2012. (Dkt. Nos. 17, 18.) By motion also filed on October 9,

20  Plaintiff seeks an extension of time to file her response. (Dkt. No. 16.)

21          Rule 6(b) of the Federal Rules of Civil Procedure provides that the court may "for good

22  cause" extend the time in which an act must be done on motion made after the time has expired

23  "if the party failed to act because of excusable neglect." Defendants argue that counsel's

24  misreading of the local rules does not constitute "excusable neglect" and that Plaintiff's failure to

25  timely respond to their motion should be deemed an admission of its merit. (Dkt. No. 22.)

26          To determine whether Plaintiff's failure to meet the deadline for filing her opposition

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS
PAGE - 3

constitutes excusable neglect, the Court applies the four-factor test adopted by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 n.4 (9th Cir. 1996). In *Pioneer*, the Court determined that neglect included "omissions caused by carelessness." 507 U.S. at 388. Whether such an omission is excusable is an equitable determination taking account of: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the party seeking the extension acted in good faith. *Id.* at 395.

Defendants' assert that they would be prejudiced by permitting Plaintiff to file her opposition late because they had less time to prepare their reply to her opposition than they should have had under the local rules (Dkt. No. 22 at 3.) Defendants, however, filed a perfectly adequate reply on October 12, 2012 (Dkt. No. 21.) The Court finds that Defendants were not materially prejudiced by Plaintiff having filed her response one day late. Moreover, the Court would have granted a request from Defendants for an extra day to file their reply. In addition, the length of Plaintiff's delay was a single day and it had no impact on these proceedings.

The reason for Plaintiff's delay is very poor. Plaintiff's argument that Local Rule 7 is confusing (Dkt. No. 16 at 4), which she supports by stating that both her attorneys misread the rule, is utterly meritless. The rule is easy to understand, as evidenced by the fact that the vast majority of litigants in this court have no trouble understanding its requirements. Counsel's misreading of Local Rule 7 can only be attributed to carelessness. There is no reason to think, however, that Plaintiff's counsel was acting in bad faith. It appears that they made a mistake, a serious and embarrassing one, but a mistake nonetheless. Because the Court sees no prejudice to Defendants resulting from this mistake, Plaintiff's motion for an extension of time to file her response to Defendants motion to dismiss is GRANTED.

### B.   Defendants' Motion to Dismiss

#### 1.   Plaintiff's FDCPA Claim and the Statute of Limitations

The FDCPA creates a private right of action for violations of the Act. 15 U.S.C. § 1692k(a). The FDCPA includes a one-year statute of limitations that begins to run when the alleged violated occurs. *Id.* § 1692k(d); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). Plaintiff's complaint describes discrete acts that occurred more than one year before she filed her complaint. (*See* Dkt. No. 10 at 3–9.) Defendants move to dismiss any FDCPA claims arising from those acts. (Dkt. No. 12 at 5.) Plaintiff responds that the factual allegations pertaining to events before September 8, 2011 (one year before she filed her complaint) are relevant to her state law claims, not her FDCPA claims. (Dkt. No. 19 at 3.) Accordingly, the Court DENIES Defendants motion to dismiss Plaintiff's FDCPA claims on statute of limitations grounds.

#### 2.   Plaintiff's Fraud Upon the Court Claim

Plaintiff's "Fourth Claim for Relief"[2] alleges that Defendants are liable for "perpetrating a fraud upon the court" when they sought a default judgment against her in state court. (Dkt. No. 10 at 14–15.) Plaintiff also alleges that Defendants' conduct violated the Washington State Rules of Professional Conduct ("RPC")—the ethical rules governing the conduct of Washington attorneys—and is "sanctionable." (*Id.* at 15.)

Defendants argue that any claims based on the RPC should be dismissed because they are not a basis for a cause of action under Washington law. The Washington Supreme Court has held that the RPC "do not give rise to an independent cause of action against [an] attorney." *Hizey v. Carpenter*, 830 P.2d 646, 650–51 (Wash. 1992). The court went on to conclude that violations of the RPC could not be used as evidence of malpractice because the ethical rules "when relied upon to establish a breach of the legal standard of care, provide only vague guidelines." *Id.* at

---

[2] There are two claims in Plaintiff's First Amended Complaint denominated "Fourth Claim for Relief." The first is found on pages 14–15 of the compliant and the second is found on pages 15–16. (Dkt. No. 10 at 14–16.) The Court's analysis here is of the former.

651–52. Accordingly, Plaintiff's claim that Defendants are liable for having breached the RPC is not a cognizable legal theory. The Court DISMISSES the claims found in paragraphs 56 and 57 of Plaintiff's complaint.

Defendants argue that Plaintiff's fraud upon the court claim should be dismissed because the Court lacks subject matter jurisdiction over the claim under the *Rooker-Feldman* doctrine. (Dkt. No. 12 at 8.) The Court does not agree. "[W]here the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). Plaintiff's complaint does not allege that she was injured by the state court's entry of a default judgment against her. She alleges that she was injured by Defendants' failure to inform the state court of their communications with Plaintiff in their motion for default judgment and by their request for a judgment greater than the amount Plaintiff actually owed. (Dkt. No. 10 at 14–15.)

The Court expresses no opinion as to whether 28 U.S.C. § 1738 may preclude Plaintiff from litigating the propriety of Defendants conduct in seeking the default judgment against Plaintiff. Defendants hint at a preclusion argument in their reply brief. (Dkt. No. 21 at 5.) The Court declines to address that argument because Defendants did not make it in their motion to dismiss and Plaintiff has had no opportunity to respond.

Finally, Defendants argue that Plaintiff's claim for fraud upon the Court is barred by Washington's litigation privilege because it is based on the conduct of lawyers engaged in litigation. Defendants focus on Plaintiff's assertion that declarations filed in the state court proceeding were false. Plaintiff's allegation is that the pleadings in the state court action against her, which include a motion, declaration, and affidavit filed by Defendants, were fraudulent. (Dkt. No. 10 at 5–6.)

Defendants are correct that as a general rule, witnesses in judicial proceedings enjoy absolute immunity from suit based on their testimony. *See Wynn v. Earin*, 181 P.3d 806, 810

1    (Wash. 2008). In general, attorneys enjoy similar immunity for conduct in judicial proceedings

2    on behalf of a client. *McNeal v. Allen*, 621 P.2d 1285, 1286 (Wash. 1980) (attorney immune

3    from libel suit based on statements in prior judicial proceeding); *Jeckle v. Crotty*, 85 P.3d 931,

4    937 (Wash. App. 2004) (based on the facts before the court, plaintiff could not sue adversary's

5    attorney for violation of CPA). In cases over whether attempts to collect debts violated

6    Washington consumer protection laws, however, courts have concluded that lawyers and law

7    firms can be liable for conduct in prior litigation. *See, e.g.*, *Mandelas v. Gordon*, 785 F. Supp. 2d

8    951, 959–61 (W.D. Wash. 2011) (discussing when a law firm can be considered a collection

9    agency subject to WCCA and CPA claims); *Evergreen Collectors v. Holt*, 803 P.2d 10, 13

10   (Wash. App. 1991) (discussing liability for litigation conduct under WCCA). The Court does not

11   agree with Defendants' argument that the conduct of lawyers in litigation can never give rise to

12   suit by an opposing party. *See Paris v. Stenberg & Stenberg*, 828 F. Supp. 2d 1212, 1220 (W.D.

13   Wash. 2011) (lawyer could be liable under WCCA "if his activity went beyond merely acting as

14   legal counsel and included activities similar to that of a collection agency"). Plaintiff's complaint

15   contains sufficient factual allegations to conclude that Defendants were acting as a collection

16   agency under Washington law when they sought a default judgment against her in state court.

17   Accordingly, they are potentially liable for their conduct in that proceeding. The Court DENIES

18   Defendants' motion to dismiss Plaintiff's "fraud upon the Court" claim.[3]

19                     **3.  Plaintiff's Claim under the CPA**

20         Defendants move to dismiss Plaintiff's CPA claims. (Dkt. No. 12 at 8–10.) To prevail on

21   a CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice;

22   (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her

23

24   _____

25       [3] The Court questions whether "fraud upon the court" is a basis for liability (as opposed
     to a basis for relief from an earlier judgment) but does not resolve that issue because it was not

26   raised in Defendants' motion to dismiss.

business or property; (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Conduct that violates the WCCA is an unfair act or practice occurring in trade or commerce for purposes of the CPA. *See* Wash. Rev. Code § 19.16.440. Plaintiff's Second Claim for Relief alleges that Defendants' debt collection activities violated the WCCA and CPA. Defendants only seek to dismiss Plaintiff's Second Claim for Relief as to Defendant Friedl; the Court addresses those arguments later in this order. Defendants also move to dismiss Plaintiff's Fifth Claim for Relief, which is also a CPA claim.

Defendants argue that Plaintiff's Fifth Claim for Relief should be dismissed because "actions taken after a matter is filed with a court do not [f]all under the CPA." (Dkt. No. 12 at 9 (citing *Blake v. Federal Way Cycle Ctr.*, 698 P.2d 578, 584 (Wash. App. 1985)). The Washington Court of Appeals, however, has rejected that argument in cases involving attempts to collect consumer debt. *See Holt*, 803 P.2d at 13 ("[T]he language in *Blake* indicating that the filing of a lawsuit took the defendant's conduct out of the sphere of trade or commerce does not apply here where the very business of a collection agency often requires it to sue debtors in court."); *Cruson v. A.A.A.A., Inc.*, No. 58163-5-I, 2007 WL 2363475, at * 7 (Wash. App. Aug. 20, 2007) (in light of the WCCA's "clear intention to bring collection agency activity within the coverage of the [CPA], it would be ludicrous to hold that an agency's tactics after filing suit are exempt from such coverage"). Defendants' argument that the adversary of a lawyer's client cannot sue the lawyer under the CPA is also unavailing in light of Washington cases arising in the specific context of debt collection activity by lawyers. *See id.* Defendants' argument that the work of an attorney is necessarily different from the work of a collections agency has been rejected by numerous courts, including this one. *See Paris*, 828 F. Supp. 2d at 1219–20; *Mandelas*, 785 F. Supp. 2d at 960–61. Whether Defendants' conduct in attempting to recover attorney's fees from Plaintiff as part of a default judgment "went beyond merely acting as legal counsel and included activities similar to that of a collection agency," *Paris*, 828 F. Supp. 2d at 1220, is a question of fact. Accordingly, the Court DENIES Defendants' motion to dismiss

Plaintiff's Fifth Claim for Relief.

### 4.  Plaintiff's Conversion Claim

Under Washington law, conversion occurs "when a person intentionally interferes with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2009). "Money may be the subject of conversion if the defendant wrongfully received it." *Id.* In the *Alhadeff* case, the Washington Supreme Court concluded that a bank was not liable for conversion where it had obtained funds by draft from the plaintiff's bank account pursuant to a letter of credit. *Id.* The bank did not comply with the requirements of the letter of credit when making the drafts, but used the funds as the parties had agreed. *Id.* at 1218, 1223.

Plaintiff alleges that Defendants converted her property by continuing to debit $150 payments from her bank account after her authorization had expired on May 18, 2011. (Dkt. No. 10 at 8.) She points to Defendants' letter memorializing the terms of her payment plan as proof of her limited authorization. (*Id.*) The terms of the letter, however, also state that Plaintiff will not terminate her authorization of the withdrawals until the debt is paid in full, which suggests that Plaintiff authorized at least thirty-five monthly withdrawals of $150. Just as in the *Alhadeff* case, the Defendants were authorized to withdraw money from Plaintiff's bank account and they used the money to reduce Plaintiff's debt as agreed. Moreover, if Plaintiff wished to terminate her authorization after May 18, 2011, she should have contacted her bank and done so at some point before Defendants withdrew an additional fourteen payments. Accordingly, the Court DISMISSES Plaintiff's conversion claim.

### 5.  Plaintiff's Claims Against the Individual Attorneys

Defendants argue that Plaintiff's claims against attorney Peter Osterman should be dismissed because the only allegation against him is that he attempted to negotiate a settlement with Plaintiff. (Dkt. No. 12 at 11.) The Court agrees that this allegation is not a sufficient basis on which to find liability against Osterman. Accordingly, all claims against Defendant Osterman

1    are DISMISSED without prejudice.

2        Defendants also argue that Plaintiff's claims against Defendant Laurie Friedl should be

3    dismissed. To the extent that Plaintiff makes any claims against Friedl under the FDCPA, they

4    are DISMISSED without prejudice because the complaint does not allege that Friedl did

5    anything within one year of Plaintiff's filing of the instant action.

6        For the reasons discussed in sections B.2 and B.3, *supra*, the Court rejects Defendants'

7    argument that Friedl cannot be liable under Washington consumer protection laws for her

8    activities in the course of litigation. Accordingly, the Court DENIES Defendants' motion to

9    dismiss Plaintiff's Second Claim for Relief, (first) Fourth Claim for Relief, and Fifth Claim for

10   Relief as to Defendant Friedl.

11       Defendants also move to dismiss Plaintiff's claim for misrepresentation as to Defendant

12   Friedl. Plaintiff alleges that the Friedl's law firm represented to Plaintiff that it would not pursue

13   legal action against her while she made timely payments as required by the payment plan. (Dkt.

14   No. 10 at 3–5.) Plaintiff alleges that Friedl signed and a filed a motion for default judgment

15   against Plaintiff after the payment plan was set up and Plaintiff made payments required under

16   the plan. (*Id.*) These allegations are sufficient to support a claim for misrepresentation against

17   Friedl. Accordingly, Defendants' motion to dismiss Plaintiff's (second) Fourth Claim for Relief

18   as to Friedl is DENIED.

19 **III.**    **CONCLUSION**

20       For the foregoing reasons, Plaintiff's motion for an extension of time (Dkt. No. 16) is

21   GRANTED. Defendants' motion to dismiss (Dkt. No. 12) is GRANTED in part and DENIED in

22   part.

23   //

24   //

25   //

26

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS
PAGE - 10

1   DATED this 15th day of November 2012.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS
PAGE - 11